**W. B. TAYLOR, Plaintiff In Error,**

v.

**STATE of Oklahoma ex rel. Ross RUTHERFORD, County Attorney, in and for Jackson County, State of Oklahoma, Defendant In Error.**

**No. 36745.**

Supreme Court of Oklahoma.

Oct. 18, 1955.

As Amended Oct. 28, 1955.

Rehearing Denied Dec. 13, 1955.

Hollis Arnett, Mangum, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., Ross Rutherford, County Atty., Jackson County, Altus, for defendant in error. B. E. (Bill) Harkey, Oklahoma City, of counsel.

HALLEY, Justice.

This action was instituted by the State of Oklahoma ex rel. Ross Rutherford, County Attorney of Jackson County, Oklahoma, in the District Court of that County, seeking a permanent injunction restraining W. B. Taylor from engaging in, offering to engage in, or holding himself out as qualified to engage in the diagnosis or treatment of any human ill as defined in Sections 731.1 to 731.6, 59 O.S.1951, and from using the prefix or abbreviation "Dr." and the word "physician" before or after his name as provided by Sections 725.1 to 725.3 and Section 702, 59 O.S.1951.

The injunction as prayed for was granted September 20, 1954, and defendant has appealed. The parties will be referred to as they appeared in the trial court where the State was plaintiff and W. B. Taylor, defendant.

Plaintiff alleged that the statutes above cited and commonly referred to as the "Healing Arts Act" make it unlawful for any person to practice or offer to practice any branch of the healing arts or to engage in or hold himself out as qualified to engage in the diagnosis or treatment of any human ill as therein defined, unless he holds a legal license or certificate issued under the laws of Oklahoma authorizing him to do the things above set out.

It was alleged that W. B. Taylor held no such license or certificate but was engaged in such practice and holding himself out as qualified to do so, and that unless restrained he would continue to engage in the diagnosis and treatment of such human ills in violation of the statutes above referred to, to the irreparable damage or injury of the public and especially persons who may become a patient of the defendant, and that plaintiff is without adequate remedy of law.

Also, that defendant has appended the name or abbreviation "Dr." in front of his name and used the word "physician" in his advertising, both of which indicate that he was qualified for diagnosis and treatment of the healing arts in violation of Section 2, Title 59, Chapter 16, Session Laws of 1947, and prayed for a permanent injunction and restraining order forbidding the defendant from engaging in or holding himself out as qualified to engage in the diagnosis or treatment of any human ill as defined in the statutes hereinafter quoted and from using the prefix or abbreviation "Dr." or the word "physician."

The defendant filed a combined demurrer and motion to dismiss in which he alleged that the County Attorney is not the real party at interest; that the County Attorney has no authority to bring this action in the name of the State; that the petition fails to state facts sufficient to entitle plaintiff to injunctive relief; that the acts alleged provide a criminal penalty and that plaintiff has an adequate remedy at law; and that the statutes above cited are discriminatory and violate Section 2, Article II, of the Constitution of Oklahoma, and the 14th Amendment of the Federal Constitution.

The demurrer and motion were overruled and defendant filed an answer setting up the same matters urged in his motion and demurrer and in addition alleged that the practice of naturopathy does not come within the above statutory provisions or, that if it does, defendant has complied therewith.

Defendant alleged that Naturopathy is a nationally recognized professional practice; that the Act alleged to have been violated by defendant is a criminal statute, provides a criminal penalty for its violation, giving the plaintiff an adequate remedy at law and that an injunction denying the defendant the further practice of his profession would in effect be denying him the right to trial by jury in violation of the State and Federal Constitutions.

The pertinent provisions of 59 O.S.1951 §§ 731.1 to 731.4 are as follows:

§ 731.1 "(a) The word 'person', as used in this Act, shall include any individual, or association of individuals or group of individuals.

"(b) The words 'human ill', as used in this Act, shall include any human disease, ailment, deformity, injury or unhealthy or abnormal physical and/or mental condition of any nature.

"(c) The word 'diagnosis', as used in this Act, shall include the use professionally of any means for the discovery or determination of any human ill as herein defined, or the cause of any such human ill.

"(d) The word 'treatment', as used in this Act, shall include the use of drugs, surgery, including appliances, manual or mechanical means, or any other means of any nature whatsoever, for the cure, relief, paliation, adjustment or correction of any human ill as defined herein."

§ 731.2 "Proof that any person appends to his name the word 'Doctor', the abbreviation 'Dr.', or any other word, abbreviation of designation.

which word, abbreviation or designation, indicate that he is qualified for diagnosis and/or treatment, as herein defined, shall, constitute prima facie evidence that he is holding himself out, within the meaning of this Act, as qualified to engage in such diagnosis and/or treatment. * * * "

§ 731.3 "No person shall in any manner engage in, offer to engage in, or hold himself out as qualified to engage in the diagnosis and/or treatment of any human ill unless such person is the holder of a legal and unrevoked license or certificate issued under the laws of Oklahoma authorizing such person to practice the healing art covered by such license and is practicing thereunder in the manner and subject to the limitations provided by the laws of the State of Oklahoma for the issuance of such license or certificate for the practice thereunder."

§ 731.4 "Any person who shall violate the provisions of this Act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Fifty Dollars ($50.00), nor more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for not less than five (5) days, nor more than thirty (30) days, or by both such fine and imprisonment. Each day upon which this Act shall be violated shall constitute a separate offense and be punishable as such."

Sections 725.1 to 725.3, 59 O.S.1951, are as follows:

§ 725.1 "Every person who writes or prints, or causes to be written or printed, his name (whether or not the word 'Doctor', or an abbreviation thereof, is used in connection therewith) in any manner in connection with such person in any manner engaging in, or in any manner holding himself out as engaging in, any of the branches of the healing art as defined in 59 O.S. 1951 § 702, must append to his name so written or printed in the same size letters as his name appropriate and generally and easily understood words

or letters, which clearly show and indicate the branch of the healing art in which he is licensed to practice and is engaged."

§ 725.2. "The following six classes of persons who may use the word 'Doctor', or an abbreviation thereof, shall have the exclusive right to use (whether or not in connection with the word 'Doctor', or any abbreviation thereof) the following designations:

"1. The letters 'D.C.' by a person licensed to practice chiropractic under Chapter 5, Title 59, Oklahoma Statutes 1951,

"2. The letters 'D.D.S.' by a person licensed to practice dentistry under Chapter 7, Title 59, Oklahoma Statutes 1951,

"3. The letters 'M.D.' by a person licensed to practice medicine and surgery under Chapter 11, Title 59, Oklahoma Statutes 1951,

"4. The letters 'O.D.' by a person licensed to practice optometry under Chapter 13, Title 59, Oklahoma Statutes 1951,

"5. The letters 'D.O.' by a person licensed to practice osteopathy under Chapter 14, Title 59, Oklahoma Statutes 1951, and

"6. The letters 'D.S.C.' by a person licensed to practice chiropody under Chapter 4, Title 59, Oklahoma Statutes 1951."

§ 725.3 "Any person who shall violate the provisions of this Act shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than Twenty-five Dollars ($25.00) nor more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for not less than five (5) days nor more than thirty (30) days, or by both such fine and imprisonment. Each day this Act is violated shall constitute a separate offense and shall be punishable as such."

The evidence offered by the plaintiff consisted of the testimony of several people who had been treated by the defendant.

One witness testified that in April, 1954, she was treated for kidney stones by the defendant who gave her certain pills to dissolve the stones; that the treatments "were irrigation of the bowels, and a mechanical something on the kidney back here; an electric something that he ran over my back." She stated the amount charged for such treatments.

Another witness testified defendant gave him several treatments with "some kind of an electric machine on my back" for arthritis and also gave him three injections or shots, one of which was in his arm and two in his hip; that defendant prescribed "Vitamore" for him and that such treatments stopped the pain but that such pain started again. He also testified as to the fees charged and paid.

A third witness testified that the defendant diagnosed her illness as "neuritis" and gave her several shots or injections in the arm; that the shots cost $4 each; that she understood the shots were "Panbile" or "dried ox bile", and that she had read defendant's advertisement in the Altus Times Democrat.

A fourth witness testified that defendant gave her treatments in March, 1954; that she first went twice a week and was given "machine treatments" and "shots" and "vitamins". Defendant told her she had "concrete regrowth of tissue" from an early injury and administered what she thought he said was "iodine" by way of some kind of pack. This witness testified that she had been to other doctors before going to defendant and prior to going to him she had lost much weight and had to go to bed each month on account of menstrual periods and that he used a machine on her and she obtained relief for the first time.

It was stipulated that the following sign appeared on the defendant's window and office door after the middle of January, 1954:

"Dr. W. B. Taylor N. D.
Physician—General Practice"

Plaintiff introduced a prescription given by "Dr. W. B. Taylor, N. D." to Mrs. Hardage and also the six tablets so prescribed. Plaintiff also introduced the following advertisement:

"Announcing
"Dr. W. B. Taylor, N. D.
"Physician & Staff
"Offices now open
"220 N. Main                    Altus
"Affiliated with the Arthritis National Research Foundation.
"Specializing in Physical Therapy, Arthritis, Rheumatism, Colon Disorders, Brusitis,
"The most scientific and advanced treating techniques offered. * * *"

Plaintiff introduced an advertisement "By the courtesy of the National Research Foundation" and defendant testified, "I was acting with the National Research Foundation", and in January, 1954, the following advertisement appeared:

"*A Challenge to the sick & crippled*
"Free clinic day
"Tuesday, January 26th
"Thursday, January 28th
"No one is under obligation for examination and introductory treatment for Arthritis, Rheumatism, Neuritis or Allied Disorders.
"All new and modern equipment, Scientific records of years of research. Records of successful dissipation of gall stones and kidney stones without surgery.
"Dierker Hospital method of colon restoration and rectal troubles.
"All appointments must be made by telephone preceeding Free Clinic Day.
Courtesy of the Arthritis
National Research Foundation
"Phone 2393 220 N. Main Street
                    Altus, Okla."

The defendant testified that he is a "Naturopathic Doctor" and had been operating in Altus, Oklahoma, since January, 1954, and that his "license or certificate" to so practice is as follows:

"Oklahoma State Board of
Naturopathy

"This is to certify that Dr. W. B. Taylor is granted this License to practice in the State of Oklahoma as a Naturopathic Physician having met the requirements and passed the required examination, as set forth in the charter granted by the State of Oklahoma on the third day of June, 1939, to the Oklahoma Association and College of Naturopathy and Physiotherapy Doctors, Inc., we, the officers of this duly appointed Board of Examiners, do hereby sign our names and place the seal of the Board on this doctor's license certificate, thereby entitling ―――― to all the benefits and honors thereof on the 4th day of Jan. 1954.

Dr. Geo. King, N. D.
President

"Max V. Tauscher, N. D.
Secretary

"Dr. Geo. W. Boley, N. D.
Treasurer

"This license is validated for each insuing year by payment of the sum of ten dollars to the Treasurer of the Board during the month of January of each year. License may be revoked by this Board or any succeeding Board for failure to abide by the laws of this Board or by conduct unbecoming a reputable Physician."

("Seal")

The defendant also introduced a certified copy of the articles of incorporation of the "Oklahoma Naturopathic and Physiotherapy Physicians Association, Oklahoma City", and also the Charter or certificate issued to said association dated February 2, 1954. In regard to the certificate or license introduced by the defendant, he testified:

"Q. Now, that is the certificate upon which you are relying, to practice, as far as the certificate is concerned, in the State of Oklahoma? A. That is correct."

On cross-examination, defendant testified that since about January 1, 1954, he had "treated arthritis" in Jackson County, Oklahoma, and specialized in "rheumatism" and that for such ailments he gave "shots" "with a hypodermic needle" penetrating the flesh of his patients to whom he gave "vitamins" to relieve them. He testified that it was his theory that vitamins were not drugs and that he specialized in the treatment of colon disorders by mechanical therapy, that is by flushing out the lower intestines and that he also treated bursitis as an inflammation condition of the bursa under the tendons of the shoulder by means of ultra high frequency sound waves. He testified that he considered himself qualified to diagnose the diseases referred to in plaintiff's exhibit No. 4, including arthritis, rheumatism, neuritis or allied disorders and dissipation of gall stones and kidney stones without surgery.

Defendant stated that he did not know whether the Oklahoma State Board of Naturopathy, mentioned in his license, is authorized by the statutes of Oklahoma as one of the branches of healing arts of this State and that he secured such license after a very intensive examination in Oklahoma City, but that there was no college called the Oklahoma Association and College of Naturopathy and Physiotherapy Doctors and no teaching staff or equipment where he took the examination but that the examining board had offices there.

It is not denied that the defendant has no license or certificate authorized by the State of Oklahoma. Section 731.3, supra, expressly states that "No person shall in any manner engage in, offer to engage in, or hold himself out as qualified to engage in the diagnosis and/or treatment of any human ill unless such person is the holder of a legal and unrevoked license or certificate issued under the laws of Oklahoma authorizing such person to practice the healing art covered by such license * * *."

The defendant admits that he has no license or certificate issued by the State Board of Examiners. No board exists which is authorized to issue such license or certificate. He does hold a license issued by authority of an Oklahoma Corporation which was created and set up by the Naturopaths themselves. The certificate:

which the defendant holds is not authorized by the laws of Oklahoma.

Again the defendant admits that he uses the word "Doctor", or abbreviation thereof, and that he is not one of the six classes of persons given the exclusive right to use such word or any abbreviation thereof by Section 725.2, 59 O.S.1951, commonly referred to as the "Doctor's Title Act."

■ ■ The foregoing admitted facts and the undisputed evidence above outlined make it clear that the defendant is engaged in violating the statutes above quoted.

Defendant contends that neither the facts nor the pleadings are sufficient to entitle the plaintiff to injunctive relief. It is true that each of the acts quoted carries a criminal clause making a violation thereof a misdemeanor, and each day of violation constitutes a separate offense.

Defendant takes the position that the County Attorney is only authorized to represent the State in criminal actions and civil actions wherein the County is an interested party, or to abate a common nuisance.

■ Since the "healing arts act" does not create any State Board, it can only be enforced by a criminal or civil action brought by the County Attorney for the State. The County Attorney is authorized to appear in and prosecute certain actions by Section 183, 19 O.S.1951, in the following language:

"The county attorney shall appear in all trial courts and prosecute all actions for crimes committed in his county, whether the venue is changed or not; and he shall prosecute or defend in all courts, State and Federal, in any county in this State, all civil actions or proceedings in which his county is interested or a party."

It is also provided by Section 738.1, 59 O.S.1951, as follows:

"Injunctions, without bond, may be granted by district and superior courts to the Oklahoma State Board of Chiropody, the Board of Chiropractic Examiners, the Board of Medical Examiners, the Board of Examiners in Optometry, the Board of Pharmacy, or the State Board of Osteopathy, for the purpose of enforcing the respective acts and laws creating and establishing such boards. Laws 1951, p. 166, § 1."

Section 738.4, of the same Title, provides:

"Nothing in this Act shall abrogate the right of any county attorney in this State to institute an action to enjoin or prosecute for violations of any of the laws of this State relating to the practice of any of the healing arts. Laws 1951, p. 166, § 4."

■ The two sections last quoted show that the Legislature evidently intended to give the County Attorney authority to institute an action to enjoin the violation of laws controlling the practice of the healing arts in this State. In State Bar of Oklahoma v. Retail Credit Ass'n, 170 Okl. 246, 37 P.2d 954, this Court had before it an action to enjoin a retail credit association from engaging in the practice of law. It was said in the syllabus:

"Ordinarily, injunction will not lie purely to restrain or prevent commission of crime, but where injunction is fully warranted to restrain a series of acts or a course of conduct, the court is not deprived of jurisdiction by the mere fact that acts constituting statutory offenses must be enjoined as incidental to the general relief sought.

"Under provisions of the State Bar Act, chapter 22, art. 2 (§ 4210 et seq.), O.S.1931, the state bar may maintain an action to enjoin the unauthorized practice of law by a corporation and its agents, and to enjoin acts which are unauthorized and illegal and which tend to bring into disrepute the practice of law and the administration of justice."

The State Bar Act makes no mention of injunctions to prevent its violation but this Court, in a well considered opinion, upheld such a remedy and in the body of the opinion at page 957 of 37 P.2d stated:

"The state has a vital interest in the regulation of the practice of law

for the benefit and protection of the people as a whole, and this act was adopted in furtherance of a wholesome public policy. Clearly it was intended by the Legislature to create the state bar, vested with power to enforce the provisions of the State Bar Act by whatever lawful means it might employ for that purpose. * * * "

In the body of the opinion the Court discussed cases from Utah, Louisiana and Kentucky, which appear to uphold the right of injunctive relief to prevent a violation of State laws which are also made criminal and provide a criminal punishment. In the case of Kentucky State Board of Dental Examiners v. Payne, 213 Ky. 382, 281 S.W. 188, the Supreme Court of Kentucky held that a court of equity might restrain one from unlawfully practicing dentistry in that State despite the fact that such acts constituted a criminal offense.

The case of Choctaw Pressed Brick Co. v. Townsend, 108 Okl. 235, 236 P. 46, is also cited. In that case an officer of the State was accused of disposing of prison-made pressed brick without marking the same as prison-made as required by the statutes. The Court held that an injunction against such practice was warranted despite the fact that such acts constituted a crime under a criminal statute.

The State also cited Unger v. Landlords' Management Corporation, 114 N.J.Eq. 68, 168 A. 229, where it was held that the mere fact that the practice of law without a license was punishable criminally, did not prevent the issuance of injunction to prevent its continuance.

In Nation v. Chism, 154 Okl. 50, 6 P.2d 766, 769, the Court said in the body of the opinion as follows:

"We are aware of the fact that many courts hold that injunctive relief will not be granted to prevent the enforcement of a criminal statute. Many of those decisions are based on statutes and procedure not applicable in Oklahoma. The distinctions between actions at law and suits in equity have been abolished in Oklahoma. Section 178, C.O.S.1921 [12 O.S.1951 § 10]. Section 405, C.O.S.1921 [12 O.S.1951 § 1382], provides for injunctive relief, not only to prevent 'injury to the plaintiff,' but injury to 'the plaintiff's rights respecting the subject of the action.' Under the provisions of that section, it cannot be said that injunctive relief in Oklahoma is limited to protection of property. * * * "

■ We can conceive of no profession which affects the public welfare more than that of the practice of medicine and allied professions which seek to cure or alleviate human ills. We conclude that the mere fact that a violation of the statutes, here charged to be violated, constitutes a criminal offense, does not deprive a court of equity from granting injunctive relief to prevent such violations.

The defendant quotes extensively from the early case of State ex rel. West v. State Capital Co., 24 Okl. 252, 103 P. 1021, 1025, where the attorney general undertook to enjoin a newspaper from advertising the sale of whisky in another state, when such sale in Oklahoma constituted a violation of the law. In that case this Court quoted the following from State v. Patterson, 14 Tex.Civ.App. 465, 37 S.W. 478, on the question of whether an injunction would lie to prohibit the commission of an act which was a crime or a nuisance:

"* * * With regard to the first proposition, we believe it will be conceded that, where property rights are involved, courts will issue injunctions, notwithstanding it may embrace a crime; or, if it should not be so conceded, we believe, on principle and authority, that this proposition cannot be gainsaid. * * * "

We think the admitted facts before the court justified the issuance of an injunction against the defendant. If the practice of Naturopathy is such as will benefit the people of Oklahoma, it seems that the Legislature should authorize its practice and provide such regulations in regard thereto as have been provided for the practice of the other healing arts above mentioned.

In 1943, this Court decided the case of Curtis v. Registered Dentists of Oklahoma, 193 Okl. 233, 143 P.2d 427, 428. The defendant, Curtis, was not a licensed or registered dentist and it was sought to enjoin him from practicing dentistry in Oklahoma in violation of the then existing State Dental Act, 59 O.S.1951 §§ 221 to 326. Even though such practice was subject to criminal prosecution, this Court held that an action for injunction was proper even though the Act did not mention injunction actions. In the third paragraph of the syllabus, the rule was announced as follows:

"The violation of a statute designed to protect the public against unlicensed persons who attempt to practice dentistry may be prevented by injunction even though the statute be also a penal one."

We do not deem it necessary to cite authorities to the effect that the right to practice any of the healing arts is a property right, where the right to practice is based upon a license or certificate issued by the authority of our State Statutes.

The above conclusions are reached upon the assumption that the various statutes above quoted are not in violation of the provisions of the State and Federal Constitutions.

Defendant contends that any injunction restraining the defendant from practicing his profession of Naturopathy violates his constitutional rights under Section 2, Article II of our State Constitution and the 14th Amendment of the Federal Constitution. Section 2, Article II of the Constitution of Oklahoma provides:

"All persons have the inherent right to life, liberty, the pursuit of happiness, and the enjoyment of the gains of their own industry."

Section 1 of the 14th Amendment to the Federal Constitution is in part as follows:

" * * * No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In support of these propositions, the defendant cites the case of Nation v. Chism, supra. In that case the plaintiffs sought to enjoin enforcement of House Bill No. 23, Session Laws of 1931 (Chapter 24, Article II, commonly referred to as the "Barbers Bill"), 59 O.S.1951 § 61 et seq., claiming that the Act was never enacted by the Legislature and never approved by the Governor. The Court said in considering a demurrer to the petition that:

"Nothing herein said is intended as a determination of whether or not the act is constitutional. We are limiting our consideration of the act to the allegation of the petition hereinabove quoted. * * *"

The Court did discuss some constitutional questions and in the fifth paragraph of the syllabus said:

"The right to labor or earn one's livelihood in any legitimate field of industry or business is a right of property, and any unlawful or unreasonable interference with or abridgment of such right is an invasion thereof, and a restriction of the liberty of the citizen as guaranteed by the Constitution."

The defendant relies upon this decision but we are unable to understand how he may rely upon it in view of the Court's statement that it was not considering the constitutionality of the Barbers Bill.

There is also cited the case of Butchers' Union, etc., Co. v. Crescent City, etc., Co., 111 U.S. 746, 4 S.Ct. 652, 28 L.Ed. 585. An examination of this opinion discloses that it involves the validity of an ordinance of the City of New Orleans giving to one concern the exclusive right to land and butcher at the slaughter house all livestock entering the city, by virtue of the Act of The Assembly of Louisiana and entitled an Act to protect the health of the City. We do not find that it has a direct bearing upon the issues before us. In the first and

third paragraphs of the syllabus it is stated:

"Although the Legislature of a State may give an exclusive right, for the time being, to particular persons or to a corporation to provide a stock landing and to establish a slaughterhouse in a city, it has no power to continue such right so that no future Legislature nor even the same body can repeal or modify it or grant similar privileges to others."

"The Legislature of a State cannot by any contract, limit the exercise of the police powers of the State to the prejudice of the general welfare, in regard to the public health and public morals."

The holding in this case involves a discriminatory Act in that it gives certain privileges to one company and forbids the exercise of such privileges by others.

█ It is claimed also by the defendant that Chapter 16, Title 59, page 357, Session Laws of 1947, Sections 725.1 to 725.3, inclusive, 59 O.S.1951, if applicable violates defendant's constitutional rights because it is a criminal statute and defendant is entitled to be tried by a jury for a violation thereof. The last cited statute is referred to as the "Doctors' Title Act." We have heretofore pointed out that courts of equity may enjoin certain acts affecting the rights, property and general welfare of the people, even though such acts are also made criminal offenses.

In Ex parte Herrin, 67 Okl.Cr. 104, 93 P.2d 21, 28, the defendant had been placed in jail for an alleged violation of the "Barbers Bill" and the Court said in part in quoting from Volume 7, page 614, Am.Jur.:

"'What regulations shall be made are largely questions for the legislative body to determine; and unless those made are unreasonable and extravagant in their nature and purpose, or arbitrarily interfere with or destroy the property or personal rights of citizens, they will be sustained by the courts, even though they may be unwise, inexpedient, or place a needless restriction upon those who desire to learn the barber's trade. The Legislature cannot, however, under guise of its police power, impose upon barbershops and beauty parlors unreasonable, capricious, or arbitrary regulations having no relation to the public health or welfare or, under guise of regulation, destroy that profession. * * *'"

█ The Act provided that barber students may not charge for their services rendered in a barber school or college. The Act was held constitutional in Schwarze v. Clark, 188 Okl. 217, 107 P.2d 1018, wherein it was pointed out that the constitutional barrier is not against an Act regulating the practice of certain occupations but against any unlawful or unreasonable interference or abridgment of the right.

In State ex rel. Grigsby v. Silvers, 198 Okl. 526, 180 P.2d 657, the State sought to enjoin defendant from practicing optometry without a certificate from the State Board of Optometry. It is made clear that the injunction would have been granted except for the fact that upon being served with process the defendant ceased to practice optometry and declared that he had only done so while under the impression that he was not violating the law.

In State ex rel. La Prade v. Smith, 43 Ariz. 131, 29 P.2d 718, 720, 92 A.L.R. 168, it appears that the statutes of Arizona provided that "'anything which is injurious to health * * * is a public nuisance.'" Rev.Code 1928, § 4693. We have no statute in Oklahoma similar to the Arizona statute but we think the rule announced in that case is worthy of our attention in considering the matter before us. In the body of the opinion at page 719 of 29 P.2d it is said:

"The matter of the regulation of the practice of medicine and surgery by the state is one of great public interest. It is regulatory and has for its purpose the protection of the public health—something that affects all people and in which they are all interested. The enforcement of such regulatory provisions, for the obvious reason that

they concern the whole people, is especially committed to governmental agencies, and the Attorney General as the legal adviser of the state we think may very properly institute and prosecute a suit against those who fail or refuse to comply with such regulations."

The practice of any branch of the healing arts certainly affects the health and well-being of the people of Oklahoma and so long as the law regulating such matters is reasonable and nondiscriminatory we think it is not unconstitutional and that a court of equity may properly enjoin such practice where there has been a failure to obtain a license authorized by the State Board of Medical Examiners as provided in the statutes above quoted.

The judgment of the trial court is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, BLACKBIRD, and JACKSON, JJ., concur.