Dear Secretary Griffin
¶ 0 This office has received your separate requests for an Attorney General's Opinion. Because your requests involve similar subject matter, we are answering your questions in a single Opinion. You asked, in effect, the following question:
 Do the Oklahoma Board of Agriculture and the Department of Agriculture have jurisdiction over, the power to promulgate rules governing, and the authority to enforce rules concerning the management and disposal of animal waste and the protection of our environment therefrom (including animal waste from operations that are not considered "Concentrated Animal Feeding Operations" by Oklahoma Statute)? If so what is the extent of such jurisdiction, rulemaking power, and enforcement authority?
 I. ENVIRONMENTAL JURISDICTION OF THE BOARD OF AGRICULTURE
¶ 1 Agriculture in Oklahoma is overseen by the State Board of Agriculture ("the Board"). The Board was created by the Oklahoma Constitution and entrusted with "jurisdiction over all matters affecting animal industry." Okla. Const. art. VI, § 31(A). The Department of Agriculture ("the Department") was created by the Oklahoma Agricultural
¶ 2 Code, Title 2 of the Oklahoma Statutes, and consists of the Board and various subordinate administrative and regulatory divisions created by the Code. 2 O.S. 1991, § 1-2[2-1-2].[1] The Oklahoma Agricultural Code grants the Board a variety of specific powers and reiterates the Board's constitutional grant of "jurisdiction over all matters affecting animal industry." 2 O.S. 1991, § 2-4[2-2-4](g).
¶ 3 In addition to its general grant of jurisdiction over animal industry, the Board has by statute been given specific jurisdiction over the environmental impacts of certain agricultural activities. In 1993, as part of a comprehensive reorganization of State environmental administration, the Legislature identified the Agriculture Department as one of eleven "State environmental agenc[ies]" for the purposes of the Oklahoma Environmental Quality Act. 27A O.S. Supp. 1997, § 1-1-201[27A-1-1-201](10). Under the act, each agency was assigned its own area of environmental jurisdiction. See 27A O.S. Supp. 1997, § 1-3-101[27A-1-3-101]. The allocation of responsibilities was designed to minimize overlap of jurisdiction among the agencies. However, except in the case of the Corporation Commission, see 27A O.S. Supp. 1997, § 1-3-101[27A-1-3-101](E), this jurisdiction was not made exclusive. See 27A O.S. Supp. 1997, § 1-2-101[27A-1-2-101](3) (Secretary of the Environment to "[c]oordinate pollution control activities . . . to avoid duplication of effort").
¶ 4 In the Oklahoma Environmental Quality Act the Department was assigned jurisdiction over several agriculture-related activities including, "point and nonpoint source discharges from agricultural crop production, agricultural services, livestock production, silviculture, feed yards, livestock markets, and animal waste." 27A O.S. Supp. 1997, § 1-3-101[27A-1-3-101](D)(1)(a). However, this grant of jurisdiction did not include authority over certain specific classes of arguably agricultural commercial facilities such as slaughterhouses, 27A O.S. Supp. 1997, § 1-3-101[27A-1-3-101](D)(2), which were instead to be regulated by the Department of Environmental Quality. In addition, the Department was prohibited from requiring permits for "point source or nonpoint source discharges related to agriculture . . . which require a federal National Pollutant Discharge Elimination Systems permit." 27A O.S. Supp. 1997, § 1-3-101[27A-1-3-101] (D)(3). These discharges were instead to remain regulated by the Environmental Protection Agency. Id.
¶ 5 Your question first asks whether the Board has jurisdiction over the management and disposal of animal waste and the protection of the environment from such waste. The answer to this question must be yes. The Oklahoma Environmental Quality Act gives the Department jurisdiction over certain discharges to the State's waters from animal waste. Yet this is not the limit of the Department's jurisdiction. The Act specifically states that, "[t]he jurisdictional areas of responsibility specified in this section shall be in addition to those otherwise provided by law and assigned to the specific environmental agency." 27A O.S. Supp. 1997, § 1-3-101[27A-1-3-101](A). Even before the passage of the Oklahoma Environmental Quality Act the Board had jurisdiction over "all matters affecting animal industry." Okla Const. art. VI, § 31 (emphasis added). Clearly the management and disposal of animal waste "affects" animal industry. Thus, although it may share this jurisdiction with other entities, the Board has jurisdiction over all aspects of the management and disposal of animal waste, including the environmental and aesthetic impacts of such waste on the air, land, or water of the State.[2]
 II. AUTHORITY OF THE BOARD TO ISSUE REGULATIONS
¶ 6 The fact that the Board has jurisdiction over animal waste does not, in and of itself, mean that the Board has authority to promulgate regulations governing animal waste. An agency has the power to promulgate regulations only if the Legislature has specifically granted the agency such authority or if the authority is "necessary for the due and efficient exercise of the powers expressly granted, or . . . may be fairly implied from the statute granting the express powers." Marley v. Cannon,618 P.2d 401, 405 (Okla. 1980).
A. CAFO Act
¶ 7 In the area of animal waste, the clearest delegation of rulemaking authority to the Board comes from the Oklahoma Concentrated Animal Feeding Operations Act, 2 O.S. Supp. 1997, §§ 9-201[2-9-201] to 9-214 ("the CAFO Act"). The CAFO Act governs the construction and operation of certain large animal feeding operations known as Concentrated Animal Feeding Operations or "CAFOs." 2 O.S. Supp. 1997, § 9-201[2-9-201](B). Among the areas regulated by the CAFO Act are the environmentally safe storage and disposal of animal waste from CAFOs. See, e.g., 2 O.S. Supp. 1997, §§ 9-201[2-9-201], 9-205.2, 9-205.3. The Act gives the Board authority "to promulgate rules for the administration, and implementation and enforcement" of the Act. 2 O.S. Supp. 1997, § 9-203[2-9-203]. At least for facilities subject to regulation under the CAFO Act, then, the Board of Agriculture has authority to promulgate regulations for the management and disposal of animal waste.
¶ 8 The CAFO Act governs two classes of facilities — (1) animal feeding operations that voluntarily submit themselves to regulation by applying for a CAFO license and (2) particular animal feeding operations identified by the Board as significant contributors of pollution to waters of the State — which would not ordinarily be regulated as CAFOs. 2 O.S. Supp. 1997, § 9-204.1[2-9-204.1](A)(2) and (3). Thus, a relatively small facility with 700 pigs that wanted to avail itself of the protection the Act gives to licensed facilities from actions by neighbors for nuisance, could elect to be governed by the Act. See 2 O.S. Supp. 1997, § 9-210[2-9-210](B). Similarly, a poultry facility, the dry litter operations of which would not ordinarily make it subject to regulation under the Act, could be treated as a CAFO based on the Board's determination that the manure from the facility was causing high levels of algae growth in a nearby stream. See 2 O.S. Supp. 1997, § 9-202[2-9-202](B)(16). Although neither of these two facilities would be CAFOs in the ordinary sense, the Board would have power to promulgate rules to regulate them under the CAFO Act.
B. Water Quality Standards
¶ 9 A second potential source of regulatory authority over animal waste derives from the State Water Quality Standards. The Clean Water Act, 33 U.S.C. § 1251 to 1387, requires each state to develop water quality standards. 33 U.S.C. § 1313(a)(3)(A). Water quality standards designate uses for specific waters such as drinking, wildlife propagation, and aesthetic enjoyment. OAC785:45-5-10 to -19. They also identify criteria, such as a given level of dissolved oxygen, which are designed to protect or achieve the designated use. See A.G. Opin. 85-87. In this State the task of developing water quality standards has been given to the Oklahoma Water Resources Board. 82 O.S. Supp. 1997, § 1085.30[82-1085.30]. The promulgated standards are found at OAC 785:45-1 to785:45-7-3. Each State environmental agency has the duty to "[u]tilize and enforce the Oklahoma Water Quality Standards established by the Oklahoma Water Resources Board" within its jurisdictional areas of responsibility. 27A O.S. Supp. 1997, § 1-1-202[27A-1-1-202](1) and (2).
¶ 10 Throughout the nation the basic method of implementing water quality standards has been for the agency which issues permits to discharge pollutants into streams or other bodies of water to use the water quality standards in determining the amount of a given pollutant any particular permittee may discharge. See Maier v. EPA, 114 F.3d 1032, 1034 (10th Cir. 1997); 2 William H. Rodgers, Jr., Environmental Law § 4.16 (1986). In Oklahoma, the issuance and enforcement of discharge permits is, by statute, primarily the responsibility of the Department of Environmental Quality, which issues such permits under regulations promulgated by the Environmental Quality Board.See 27A O.S. Supp. 1997, §§ 2-6-103[27A-2-6-103](A) and (B).
¶ 11 The Board and Department of Agriculture have the analogous authority and duty to utilize the State water quality standards in establishing rules and issuing permits pursuant to the statutes they administer. In the context of CAFOs, for example, water quality standards can be used in determining whether an operation is "a significant contributor of pollution to waters of the state," 2 O.S. Supp. 1997, § 9-202[2-9-202](B)(11)(d); in developing "Best Management Practices," § 9-205.3(B); in evaluating whether an Animal Waste Management Plan has minimized "contamination of waters of the state," § 9-205.3(C); and in establishing "standards for [animal waste] retention structures," § 9-205.4(E). Similar use of the water quality standards can be made in developing regulations implementing the provisions of the Agricultural Code governing the environmentally responsible storage of fertilizer. See 2 O.S. Supp. 1997, § 8-68a[2-8-68a].
¶ 12 In addition to being used in developing regulations under existing regulatory schemes, State water quality standards can provide the basis for their own set of regulations. The Department of Agriculture has a duty to "enforce" water quality standards. 27A O.S. Supp. 1997, § 1-1-202[27A-1-1-202](2). As is discussed in Section III, below, the Department may do this directly by bringing injunctive actions to require compliance with the standards. However, the Department may also enforce the standards through the issuance of regulations prescribing particular practices designed to achieve and maintain the water quality standards.
¶ 13 The Board has been given broad authority to adopt rules and regulations appropriate for the carrying out of "any of the purposes, objectives, or provisions of this [Agricultural] Code." 2 O.S. Supp. 1997, § 2-4[2-2-4](2). One of the most important purposes of the Code is the protection of water quality. When the portions of the Code dealing with fertilizer were amended in 1987 it was, among other reasons, for the purpose of "providing for protection of state waters." 1987 Okla. Sess. Laws ch. 60. The Code also includes a directive to the Department to establish a laboratory for the purpose of "conducting analyses to determine the qualitative and quantitative amounts of pesticidal residues or other objectionable, harmful, or deficient materials in crops, foodstuffs, [and] water." 2 O.S. 1991, § 2-19[2-2-19](1). Elsewhere in the Code, the Department is instructed to develop a forestry plan "to conserve soil, water and wildlife and to provide outdoor recreation for healthful living." 2 O.S. Supp. 1997, § 1301-103[2-1301-103]. Similarly, the explicit purpose of the CAFO Act itself is to "provide for environmentally responsible construction and expansion of animal feeding operations." 2 O.S. Supp. 1997, § 9-201[2-9-201](B). Thus, the Board is empowered to promulgate rules to protect water quality to comply with the Board's statutory duty to enforce State water quality standards. This includes the power to promulgate rules to protect the State's water from the effects of animal waste.
 III. THE BOARD'S ENFORCEMENT POWERS
¶ 14 Regulations are a toothless watchdog if government has no power to enforce them. The CAFO Act provides a number of avenues — administrative, civil, and criminal — to enforce its provisions and the regulations promulgated thereunder. CAFOs must have a license to operate, and the Board has the power to suspend, revoke, or decline to renew the license of a CAFO which is not complying with the provisions of the act or its associated regulations. 2 O.S. Supp. 1997, § 9-211[2-9-211]. The State Agricultural Code also provides authority for the Board to assess an administrative penalty of $100.00 for every violation of the Code or rules issued thereunder, with each day that a violation continues constituting a separate violation. 2 O.S. 1991, § 11-1[2-11-1](B). In addition, the CAFO Act has its own administrative penalties of up to $10,000 per violation. 2 O.S. Supp. 1997, § 9-212[2-9-212](B). The CAFO Act also provides for criminal fines and imprisonment for up to six months per violation. Id. The Board has the power to initiate and prosecute actions, both civil and criminal, to enforce the provisions of the Act. See 2 O.S. Supp. 1997, § 2-4[2-2-4](3).
¶ 15 In addition to its authority to enforce the provisions of the CAFO Act, the Department has the power to enforce water quality standards in court. The Oklahoma Water Quality Standards contain numerous specific mandates regarding water quality and the Environmental Quality Act charges the Department with enforcing these standards. When an activity is prohibited by law, the administrative agency charged with regulating such activity has the implied power to seek an injunction to prevent the practice. State v. Warren, 331 P.2d 405, 408 (Okla. 1958) (Board of Agriculture has implied right to seek injunction to prevent violation of Oklahoma egg law); Board of Examiners inVeterinary Medicine v. Tubbs, 307 P.2d 830, 831 (Okla. 1957) (prohibition on unlicensed practice of veterinary medicine necessarily implied right of board to maintain action to enjoin such practice); Taylor v. State, 291 P.2d 1033, 1039 (Okla. 1955) (in the absence of an administrative agency county attorney has implied right of action to enforce prohibition against unauthorized practice of medicine); see also 2 Am. Jur. 2dAdministrative Law § 62 (1994). When water quality standards or regulations issued to achieve water quality standards are being violated by activities within its area of jurisdiction, then, the Board may bring an action for an injunction to enforce compliance with the standards. This remedy is in addition to the Board's authority to assess administrative penalties for violations of its regulations under 2 O.S. 1991, § 11-1[2-11-1].
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The State Board of Agriculture has jurisdiction over all aspects of the management and disposal of waste from animal industry including the environmental and aesthetic impacts of such waste on the air, land, or waters of the State. Okla. Const. art. VI, § 31(A).
 2. The State Board of Agriculture has authority to promulgate rules to regulate animal waste from operations governed by the Concentrated Animal Feeding Operations Act. In promulgating such rules the Board must utilize State water quality standards. 2 O.S. Supp. 1997, § 9-203[2-9-203]; 27A O.S. Supp. 1997, § 1-1-202[27A-1-1-202](1) and (2).
 3. The State Board of Agriculture has the authority to promulgate rules to enforce State water quality standards for all areas within its jurisdiction. This includes animal waste from animal feeding operations regardless of whether such operations are subject to the Concentrated Animal Feeding Operations Act. 2 O.S. Supp. 1997, § 2-4[2-2-4](2).
 4. The State Board of Agriculture has the authority to initiate civil and criminal actions to enforce compliance with the Concentrated Animal Feeding Operations Act. In addition, it can initiate actions for administrative penalties for violations of any of its regulations. The Board also has general authority to seek injunctive relief to obtain compliance with State water quality standards or with regulations issued to achieve such standards. 2 O.S. Supp. 1997, § 2-4[2-2-4](3); 2 O.S. 1991, § 11-1[2-11-1](B); 2 O.S. Supp. 1997, § 9-211[2-9-211].
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 CANNON MILES TOLBERT ASSISTANT ATTORNEY GENERAL
[1] Because the Board is a constituent element of, and has supervisory authority over, the Department, powers and duties assigned by law to the Department will be treated, for the purposes of this Opinion, as powers and duties of the Board as well.
[2] It should be noted that there is nothing in the Constitution's grant to the Board of jurisdiction over animal industry which would imply that this jurisdiction is exclusive. Taxation, worker safety rules, and environmental regulations all affect animal industry, but there is no reason to assume that authority over these areas could not be entrusted to the Oklahoma Tax Commission, the Department of Labor, or the Department of Environmental Quality, respectively.