## BENNETT v. STATE.

No. 19050. Opinion Filed Dec. 16, 1930.

S. A. Horton, for plaintiff in error.

Harry W. Priest and J. Berry King, Atty. Gen., for defendant in error.

ANDREWS, J. This proceeding originated in the county court of Oklahoma county, wherein was filed a complaint against John Bennett, plaintiff in error, charging him with being the father of a bastard child, under the provisions of article 3, ch. 70, C. O. S. 1921 (sections 8059-8069, both inclusive), entitled "Illegitimate Children." He will be hereinafter referred to as defendant and the defendant in error will be referred to as the state.

The defendant was placed under arrest. He entered a plea of not guilty, demanded a jury trial and was tried before a jury in the county court. Pending the trial, he was released on bail. After the return of the verdict of the jury in the county court, without a hearing and on the ex parte statement of the county attorney as to the financial worth of the defendant, the court fixed the amount of liability for the maintenance of the child in the sum of $2,000, ordered that amount paid in monthly payments, and required that the defendant give bond to secure the performance of the judgment. The bond was given, the sureties on the bail bond were exonerated and the defendant was discharged.

After a motion for new trial was overruled, the defendant appealed to this court from the verdict, order, and all of the proceedings.

There is no question here as to the power of the Legislature to provide for the care of illegitimate children and to adopt reasonable legislation therefor under the police power of the government.

The act is said by the defendant to be in violation of the Constitution and void, and that contention is made as to almost every provision of the act.

The presumption is in favor of the constitutionality of the statutes, and this court, wherever possible to do so, will uphold the constitutionality of an enactment of the Leg-

islature. Dickinson v. Perry, 75 Okla. 25, 181 Pac. 504.

This court will not pass upon the constitutionality of an act of the Legislature until there is presented a proper case in which it is made to appear that the person complaining by reason thereof has been or is about to be deprived of some right or privilege to which he was lawfully entitled, or has been or is about to be subjected to some of its burdens and penalties. Kelly v. Roetzel, 64 Okla. 36, 165 Pac. 1150.

Under that rule and the facts shown by the record in this case, many of the objections to the provisions of the act on the ground of alleged unconstitutionality are not properly before this court for decision, and we decline to pass upon the contentions made which are unnecessary to be determined in this cause.

Under the provisions of the act there are two things of which the defendant may herein complain and of which the defendant in this case does complain. The first of these is the verdict of the jury in finding him guilty, and the second is the order of the court in determining the amount that he should pay for the support of the child.

The guilt or the innocence of the defendant was submitted to a jury after a trial. The county court had jurisdiction of the subject-matter of the action. Wilson v. State, 73 Okla. 227, 175 Pac. 829. Under section 10, art. 7, of the Constitution, district courts are given original jurisdiction in civil cases except where exclusive jurisdiction is, by the Constitution or by law, conferred on some other court. Under section 12, art. 7, of the Constitution, the county court is given concurrent jurisdiction with the district court in civil cases in any amount not exceeding $1,000, until otherwise provided by law. As stated in Wilson v. State, supra, the act in question confers exclusive jurisdiction on the county court in this class of cases, and that grant of power to the county court is authorized by sections 10 and 12, art. 7, supra. The limitation on the jurisdictional amount of $1,000 applies in civil cases where the county court has concurrent jurisdiction with the district court. There is no constitutional limitation on the jurisdiction of the county court in civil cases where the county court is, by valid legislative enactment, given exclusive jurisdiction. That was the holding in Wilson v. State, supra, and we will not depart therefrom.

The trial court instructed the jury as follows:

"You are further instructed that where you find a witness has testified falsely, or has perjured himself in any way, you are at liberty to disregard his whole testimony except such part as you may find has been corroborated by other testimony."

That instruction was erroneous and prejudicial, under the facts shown by the record in this case, in that it does not limit the false testimony to that willfully and intentionally given, it does not require that the false testimony be as to a material matter, and it fails to include a requirement that the corroborating testimony shall be credible.

In the case of Henry v. State, 6 Okla. Cr. 430, 119 Pac. 278, the Criminal Court of Appeals of this state said:

"Second. Upon the trial of a cause, among other things, the court instructed the jury as follows: '* * * The court instructs you that, if you believe that any witness has willfully testified falsely as to any material fact, you are at liberty to disregard the testimony of such witness except in so far as the same may be corroborated by other credible evidence.' In the case of Charles Hast v. Territory, 5 Okla. Cr. 162, 114 Pac. 261, a conviction was affirmed where an instruction similar to the above had been given; but in that case no exceptions were reserved to the instruction, and the attention of the court was not directly called to it. But, even if this had been done, the conviction would have been sustained, regardless of this instruction, upon the ground of harmless error, because the facts stated in that opinion clearly show that the guilt of Hast was conclusively shown by testimony other than that of the prosecuting witness. This case presents an entirely different question. Here the jury could not legally have convicted appellant, unless they had given full faith and credit to the testimony of Lucy Carrington. This instruction is open to the objection that it might have created the impression upon the minds of the jurors that, although they may have found that Lucy Carrington had testified falsely to any material facts in the case, yet, if they further found that her testimony was corroborated by other credible evidence, they would be forced to accept and act upon it. In a close case like this, we do not think that the above instruction should be given. The better and safer plan would have been to instruct the jury as follows: 'If you believe from the evidence that any witness who has testified in this case has willfully and knowingly sworn falsely to any material fact, then you may, if you think proper, reject the whole of the testimony of such witness, or you may give such weight to the testimony of such witness on other points as you may deem it entitled to have. You are the sole judges of the credibility of the

witnesses and the weight and value to be given to their testimony'. See Coleman v. State, 6 Okla. Cr. 252, 118 Pac. 594." .

The instruction, as given, authorized the jury to disregard the testimony of any witness who testified falsely or perjured himself "in any way" and to believe such a witness when the testimony of that witness was corroborated by any testimony. Standing alone, we might be willing to disregard the error therein, but we cannot do so when we consider the next instruction, which reads:

"You are the exclusive judges of the credibility of the witnesses, and it is your duty to reconcile any conflict that may appear in the evidence, as far as may be in your power, upon the theory that each witness has sworn to the truth; when this cannot be done you may consider the conduct of the witnesses upon the stand, the nature of the evidence given by them, how far they are corroborated or contradicted by other testimony, their interest, if any, in the cause, their relation to the parties, and such other facts appearing in the evidence as will, in your judgment, aid you in determining whom you will believe, taking into account your experience and relations among men."

The effect of that instruction was to tell the jury that if it could not reconcile conflicts in the testimony of witnesses, it could consider how far they were corroborated or contradicted by other testimony.

Here was a case where the complainant testified that the defendant, within the period of gestation, had had sexual intercourse with her and that he was the father of her child. The defendant denied the act of sexual intercourse. The conflict in the testimony of those witnesses could not be reconciled, and either the one or the other willfully testified falsely or willfully committed perjury in a material matter. The testimony of the complainant as to the act of sexual intercourse with the defendant was uncorroborated. There was testimony in the record showing that the defendant was at the home of the complainant, when no other person was present, on a number of occasions. Under that state of facts, correct instructions were necessary and the instructions given were prejudicial.

The original complaint charged that the pregnancy was the result of an act of sexual intercourse with the defendant "during the latter part of February, 1926, and the first part of March, 1926." That complaint was sworn to by the complainant. During the trial the trial court permitted the county

attorney to amend the complaint to read, "during the latter part of April, 1926, and the first part of May, 1926." The amended complaint was not sworn to by the complainant. Upon the amendment the defendant asked for a continuance to meet the issue presented by the amended complaint, and the continuance was denied him. He asked for 24 hours to plead to the amended complaint, and that time was denied him. The trial continued without any plea to the complaint as amended. The defendant saved his exceptions to those orders.

The defendant may not have been in the company of the complainant during the latter part of February and the first part of March and he may have prepared for the trial and had witnesses present to prove that fact. When, during the trial, the date was changed to the latter part of April and the first part of May, he was entitled to time in which to procure, if possible, the evidence necessary to show that he was not in her company during that time. The defendant may have been in her company during the latter part of February and the first part of March and not in her company during the latter part of April and the first part of May. He may have made no arrangements to prove that he was not in her company during the latter part of February and the first part of March for the reason that that was not within the period of gestation. When the amendment to the complaint was made he was entitled to time in which to prepare a defense to the allegations as made in the amended complaint.

We do not care to go into an extended discussion of the actions of the county attorney in trying this case and we call attention to only a few instances of what we consider to be improper conduct on his part tending to prejudice the jury against the defendant. On cross-examination of the defendant, the county attorney asked him this question, "This Virgil Gray you were running around with out there was a bootlegger?" The defendant had testified that he was not living with his wife. The county attorney asked this question, "I will ask you if you weren't forced by Forrest L. Hughes, who was county attorney at that time, under like circumstances, to marry that girl?" The defendant objected to the manner of cross-examination, and the county attorney said:

"If this fellow wants to commit perjury in this lawsuit, he can do so. I know something about this lawsuit and if this fellow

wants to and does get up and swear that he had intercourse with this woman, he can prove it in another proceeding; and I think this witness should be subject to cross-examination under oath."

We mention these instances only for the purpose of showing that the erroneous instructions given, the amendment of the complaint, the denial of a continuance, and the denial of the time to plead to the amended complaint constitute such errors, when taken in connection with the manner in which the case was tried, as require a reversal of this judgment.

Since this cause must be retried, we desire to determine one other issue presented by the record, and that is, the rendition of the judgment by the trial court fixing the amount to be paid by the defendant for the support of the child. Section 8066, supra, provides:

"If the accused be found guilty, he shall be charged with the maintenance of the child in such sum or sums, and in such manner as the court shall direct, and with the costs of suit, and execution may issue, immediately, and afterwards from time to time for the collection of any sum or sums ordered to be paid, and, in addition thereto, the court shall require the defendant to secure the performance of the order of the court, in such manner as the court shall direct."

The defendant contends that he was entitled to a jury trial on that question. We cannot so hold. We do, however, hold that he was entitled to a trial. We must so hold, or hold that the act is unconstitutional. He cannot have his property taken from him without due process of law, for that is prohibited by our Constitution.

Where there are two possible constructions to a statute, one of which will give rise to grave doubt as to its constitutionality, and the other avoids such question, the latter will be adopted. Haskell v. Edmonds, 90 Okla. 44, 215 Pac. 629.

The act in question is capable of two possible constructions. Under its provisions, the court may make the order after the verdict without a hearing as to the needs of the child or the ability of the defendant to pay. Should we give the act that construction, we would be compelled to hold it unconstitutional. The other construction is that the court may make the order after a verdict and after a hearing and determination from the evidence adduced at the hearing as to the needs of the child and the ability of the defendant to pay. Under that construction the act would be constitutional, and that is the construction that we give to it.

This record shows that the court heard no evidence and held no hearing, but, arbitrarily and on an ex parte statement of the county attorney as to the financial worth of the defendant, made the order complained of. The effect thereof was to deprive the defendant of his property without due process of law. Neither section 8066 nor 8067, supra, authorizes the court to make, enlarge, diminish, or vacate an order or judgment in proceedings under this article without a hearing, and an order made, enlarged, diminished, or vacated by a court without a hearing will be set aside by this court on appeal. To otherwise hold would be to leave the amount of the order to the whim or caprice of the judge and to deprive the defendant of an opportunity to appeal, for the reason that there would be no way for this court to determine whether or not the order so made was excessive. The order of the court should be in such sum as is reasonably necessary, under the facts and circumstances in each particular case, for the maintenance of the child. What would be a reasonable amount in one case might be excessive in another, and vice versa. For this court to reverse such an order, it would be necessary that a showing be made that the court had abused its discretion in fixing the amount. That showing could be made only by presenting the evidence to this court for review. In the instant case there was no evidence, and the order of the court must be vacated.

The judgment of the trial court is reversed, and the cause is remanded to that court, with directions to grant the defendant a new trial, both as to the amount to be paid by him for the maintenance of the child and as to his guilt or innocence, and to take such other proceedings as are necessary in accordance herewith.

RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., concurs in conclusion. MASON, C. J., and HUNT and CLARK, JJ., absent.

Note.—See under (1) 25 R. C. L. p. 1000; R. C. L. Perm. Supp. p. 5638; Continuing Perm. Supp. p. 1022.