STATE ex rel. WHETSEL, Co. Atty., v. WOOD.

No. 34934. April 23, 1952.

Rehearing Denied Oct. 7, 1952.

*243 P. 2d 612.*

194

Washington & Thompson, Oklahoma City, for plaintiff in error.

Frank D. McSherry, Irenus P. Keith, and Logan E. Hysmith, McAlester, for defendant in error.

HALLEY, V. C. J.    This action involves the constitutionality of the Watchmaking Act of 1945, being §§771-782, inclusive, Title 59, O.S. 1951.

The State of Oklahoma ex rel. County Attorney of Pittsburg county seeks a permanent injunction restraining Thomas S. Wood, Jr., from practising watchmaking in Oklahoma without first having obtained a license or certificate of registration as a watchmaker from the Oklahoma Board of Examiners in Watchmaking, created and given certain powers by sec. 773 of the above mentioned Act.

It was alleged that the defendant never had been licensed by the Board to practise watchmaking in this state, nor had he applied for or obtained a certificate of registration as an apprentice, but that he had publicly represented himself as being a qualified watchmaker and had practised watchmaking for compensation in Pittsburg county, and would continue to do so unless restrained, all in violation of the above law and to the irreparable damage and injury of the public, and especially of persons who patronize him, and to the damage and injury of persons lawfully engaged in watchmaking, rendering them insecure in their property and thus constituting a public nuisance; that the conduct of the defendant would endanger the health and safety of others, and that the plaintiff was without adequate remedy at law.

Defendant demurred to the petition generally, and also upon the ground that the plaintiff had no legal capacity to sue; that the Watchmaking Act is void in that it deprives defendant of inherent rights, privileges and immunities guaranteed by the State and Federal Constitutions in numerous particulars, to wit:  that it seeks to deprive him of the right to liberty, the pursuit of happiness, and the enjoyment of the gains of his own industry; to deprive him of his property without due process of law, and to deprive him of his right to earn a livelihood in a legitimate field of business, that of watchmaking, and of his right to contract in matters of purely private concern; that it violates the Bill of Rights of the Federal Constitution and seeks to create a monopoly of the business of watchmaking; that it grants to a certain class of citizens certain exclusive rights, privileges and immunities, to the exclusion of others; that it grants arbitrary powers to the Oklahoma Board of Examiners in Watchmaking and gives such Board unlimited powers to permit a certain class to engage in watchmaking, to the exclusion of others, thus giving such Board legislative powers to establish rules and regulations and to arbitrarily

make additional regulations to those required by statute; that it undertakes to authorize the exercise of police power concerning a matter which does not affect the public peace, health, safety, or general welfare, without any public necessity therefor.

The court sustained the demurrer upon the ground that the act sought to be enforced by this action is unconstitutional and void. The plaintiff declined to plead further and judgment was entered for the defendant.

As to plaintiff's contention that the demurrer of defendant admitted all material allegations in its petition, we think such general rule is inapplicable where the demurrer specifically attacks the constitutionality of the law upon which the action is based. If the law is invalid, an action based thereon cannot stand. This court affirmed the judgment of the trial court in Englebrecht v. Day, 201 Okla. 585, 208 P. 2d 538, wherein the Oklahoma Unfair Sales Act was attacked upon a constitutional question by demurrer.

We cannot sustain the contention of the plaintiff that the actions of the defendant constitute a public nuisance under §§1 to 11, Title 50, O. S. 1951, since in our opinion these sections are not applicable here.

Plaintiff alleges that the first question to be determined is whether the state has the right to regulate watchmaking under what is termed the "police power" of the sovereign state. The defendant contends that the principal question involved is whether or not the manner of regulation provided by the Act invades the constitutional rights of the defendant. The term "police power" was aptly defined by this court in Ex parte Tindall, 102 Okla. 192, 229 P. 125, as follows:

"The police power is an attribute of sovereignty, inherent in every sovereign state, and not derived from any written Constitution nor vested by grant of any superior power.

"The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal and protection of the public interests."

The Watchmaking Act provides that, in the future, an applicant must have served an apprenticeship of four years or its equivalent, as determined by the Board, before he is eligible for a license. This apprenticeship must be served under a licensed watchmaker and with his consent. This provision has the effect of placing in the hands of those holding a license the power to limit the number of those allowed to engage in watchmaking in Oklahoma, and clearly tends toward creating a monopoly.

Section 2 of the Act provides that no one shall engage in watchmaking for profit or compensation without first obtaining a license in the manner therein provided. In State v. Riedell, 109 Okla. 35, 233 P. 684, 42 A. L. R. 765, this court held the Accountancy Act of 1917 unconstitutional because of a similar provision as to accountants. In the body of that opinion it was said:

"The effect of the act is that in a growing, expanding, and lucrative field of usefulness of accountants, power is given a board in which accountants have control, to restrict their number, and tends toward a monopoly. It deprives those desiring an audit the right of contract in matters purely a private concern, and deprives accountants not certified of the enjoyment of the gains of their own industry guaranteed to them by the Bill of Rights, in that it denies to them the right to follow the occupation for which they have qualified themselves by the expenditure of time and toil. * * *

"Our conclusion, therefore, is that the act in so far as it prohibits uncertified accountants from holding themselves out as professionals or expert accountants or auditors for compensation or engaging in the practice of that profession, is in conflict with the spirit and express provision of the Constitu-

tion and void, in this, that it abridges the right of private property and infringes upon the right of contract in matters purely of private concern bearing no perceptible relation to the general or public welfare, and thereby tends to create a monopoly in the profession of accountancy for the benefit of certified accountants, and denies to uncertified accountants the equal protection of the laws and the enjoyment of the gains of their own industry. The defendants are not engaged in the exercise of a franchise, but a constitutionally guaranteed right."

The holding in the Riedell case, supra, has been approved by this court in several later cases, including Cornell v. McAllister, 121 Okla. 285, 249 P. 959. A review of our decisions upholding laws regulating certain classes of business shows that they are based generally upon a finding that the business or calling is affected with a public interest. Jack Lincoln Shops, Inc., v. State Dry Cleaners' Board, 192 Okla. 251, 135 P. 2d 332, involved the business of dry cleaning and pressing, and the court held that such business was affected with a public interest in respect to public health and safety. In Herrin v. Arnold, 183 Okla. 392, 82 P. 2d 977, 119 A. L. R. 1471, the State Barber Act was upheld on the ground that it could be based upon the importance of sanitary and health conditions affecting the public interest and welfare. While watchmaking is an important calling, it is not such a business as affects the public health, safety and welfare.

The Watchmaking Act clearly prohibits one who may be fully qualified by years of training and experience from following his chosen craft and forces him to seek some other work or trade, thus depriving him of the fruits of his own industry, as guaranteed by art. II, § 2 of the Oklahoma Constitution. The provisions of the act are unreasonable, arbitrary, and discriminatory, and are not designed to promote the general welfare or contribute to the public morals, health, or safety. The Act vests in the Board powers to make rules and regulations which may deny some citizens their inherent right to earn their livelihood in a private field of work, thus depriving them of a valuable property right without due process of law.

We have been cited to no case involving the regulation of watchmakers; but we have read with considerable interest the case of State v. Ballance, 229 N. C. 764, 51 S. E. 2d 731, 7 A. L. R. 2d 407, where the Supreme Court of North Carolina had under consideration a statute regulating the occupation of photography. That court reversed the case of State v. Lawrence, 213 N. C. 674, 197 S. E. 586, 116 A.L.R. 1366, and held that the Act was unconstitutional. We quote from that opinion:

"It is undoubtedly true that the photographer must possess skill. But so must the actor, the baker, the bookbinder, the bookkeeper, the carpenter, the cook, the editor, the farmer, the goldsmith, the horseshoer, the horticulturist, the jeweler, the machinist, the mechanic, the musician, the painter, the paperhanger, the plasterer, the printer, the reporter, the silversmith, the stonecutter, the storekeeper, the tailor, the watchmaker, the wheelwright, the woodcarver and every other person successfully engaged in a definitely specialized occupation, be it called a trade, a business, an art, or a profession. Yet, who would maintain that the Legislature would promote the general welfare by requiring a mental and moral examination preliminary to permitting individuals to engage in these vocations merely because they involve knowledge and skill?"

The note to the foregoing opinion in A. L. R. had this to say:

"There is complete unanimity of opinion on the proposition of law to the effect that commercial photography is an innocuous profession and that statutes or ordinances requiring photographers applying for license to submit to an examination before a state board of examiners to determine their technical qualifications and inquire into their business integrity have no reasonable relation to the welfare, public health, morals, peace, safety, and com-

fort of the puplic generally, and therefore are not within the police power of the state. The cases in section 2, infra, indicate that statutes of this kind have been held to be in contravention of various State and Federal constitutional provisions."

This note shows that the Supreme Courts of Arizona, Florida, Georgia, Hawaii, North Dakota, Tennessee, and Virginia have passed on this question as to photographers. There is no more excuse for requiring a watchmaker to pass a test as to his technical qualifications than for requiring a photographer to pass such a test.

The judgment of the trial court is affirmed.

ARNOLD, C. J., and CORN, DAVISON, JOHNSON, and O'NEAL, JJ., concur. GIBSON and BINGAMAN, JJ., dissent.