Woodie E. Livesay

*v.*

Tennessee Board of Examiners in Watchmaking et al.

(*Nashville,* December Term, 1958.)

Opinion filed March 12, 1959.

JAMES M. SWIGGART, Special Assistant Attorney General, for appellant.

WALTER P. ARMSTRONG, JR., RICHARD H. ALLEN, Memphis, ARMSTRONG, MCCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, of counsel, for appellee.

Mr. Justice Tomlinson delivered the opinion of the Court.

The privilege of engaging in Tennessee in the occupation of repairing watches and clocks is limited by Chapter 101 of the Public Acts of 1955, Code, Section 62-1401 *et seq.*, to those who meet, and continue to comply with, the requirements of that statute, and the rules and regulations made pursuant thereto by its five-member board of examiners. The constitutionality of that statute is the question for decision.

This Board is given authority by that statute "to promulgate rules and regulations to carry out the intent of this chapter, and to establish suitable and proper uniform apprenticeship regulations", T.C.A. sec. 62-1403, with all of which a person desiring to engage in that occupation shall comply, as evidenced by a certificate of registration which he must obtain before entering into that business.

To obtain such a certificate the applicant must "be of good character", must submit to an examination given by, and under the supervision of, this Board. This applicant must "possess such general education, training and experience as the board shall deem necessary in order to properly protect the public from incompetent and fraudulent" repairers. T.C.A. sec. 62-1404. If the

Board concludes that the applicant possesses these qualifications, then he shall be permitted to take the examination "confined to such knowledge, practical ability and skill as is essential to the proper repairing of watches, and also a practical demonstration of the applicant's skill in the manipulation of watchmakers' tool". T.C.A. sec. 62-1405.

Livesay, who is engaged at Memphis in the occupation of repairing watches and clocks, and whose continuation therein is sought to be decided by this Board, filed this bill seeking the Court's adjudication as to the constitutionality of this statute. His insistence is that it is a violation of Section 8 of Articles I and XI of the State Constitution, and of the 14th Amendment to the Federal Constitution in that it deprives him, so he insists, of a property right without due process of law. From the decree of the Chancellor so adjudging the Board has appealed.

■ The occupation of repairing for a monetary consideration watches and clocks belonging to others, and at the request of these others, is an application by an individual of his labor and skill to the accomplishment of the purpose stated under contract with the owner of the watch to be paid for that service. Such an occupation is, therefore, an inherent property right. *Harbison v. Knoxville Iron Company,* 103 Tenn. 421, 430-431, 53 S.W. 955, 56 L.R.A. 316.

As this Court understands it, the Attorney General concedes, as necessarily he must, that this interference with an individual's inherent property right to pursue this occupation is not constitutionally permissible except in so far as such interference may be justified by the

police power of the State. Beyond that limitation it is the taking, in effect, of property belonging to another.

■ While the police power of the State embraces all matters reasonably expedient for the safety, health, morals, comfort and general well-being of its people, as a unit, *Harbison v. Knoxville Iron Company,* 103 Tenn. 421, 441-442, 53 S.W. 955, 56 L.R.A. 316, nevertheless, if a given legislative enactment is to be justified by reason of the inherent police power of the sovereign, it, the legislation in question, must at least exhibit a real tendency to effect that end. In application of this principle, the Chancellor adjudged Chapter 101 unconstitutional because its purported regulation of the occupation of repairing watches, a "useful and common occupation" has "no substantial relationship to the protection of the public health, morals, comfort, private happiness, domestic peace and public welfare".

This seems to be a case of first impression in Tennessee except that by analogy, certain dicta of this Court in *Wright v. Wiles,* 173 Tenn. 334, 342, 117 S.W.2d 736, 738, 119 A.L.R. 456, clearly reflected it to be the opinion of the Court as then constituted that the occupation of repairing watches is not subject to the proposed application of the State's police power rule. There the Court, after adjudging invalid, for a reason with which we are not here concerned, a statute purporting to regulate photography, added this statement:

"We find it difficult to perceive just how the licensing of photographers and regulation of the taking and finishing of pictures, with the exceptions therein set forth provided for by this Act, 'has any real tendency to protect the public safety, the public health or the

public morals'; or how and why 'the interests of the public generally, as distinguished from those of a particular class, require such interference' as this Act provides."

The business of repairing watches seems to this Court to be no more subject to regulation under the State's police power than that of taking pictures, which business, according to the above quoted dicta in the Tennessee case, is not so subject.

The Supreme Court of North Carolina in *State v. Ballance,* decided in 1949, and reported in 229 N.C. 764, 51 S.E.2d 731, 7 A.L.R.2d 407, said by way of dicta that the occupation of repairing watches is an occupation on all fours with that of photography in so far as there is concerned the question of whether either is subject to regulation for reasons which make appropriate an exercise of the police power of the sovereign.

In the Balance case, *supra,* the North Carolina Court, in the course of adjudging unconstitutional a statute undertaking to regulate the business of photography, rejected the State's insistence that photography, as an occupation, is subject to regulation under the State's police power on the ground that it is an occupation which requires skill. In so rejecting that insistence the Court said (229 N.C. 764, 51 S.E.2d 735):

"It is undoubtedly true that the photographer must possess skill. But so must * * * *the watchmaker* * * * and every other person successfully engaged in a definitely specialized occupation be it called a trade, a business, an art, or a profession. Yet, who would maintain that the legislature would promote the general welfare by requiring a mental and moral exami-

nation preliminary to permitting individuals to engage in these vocations merely because they involve knowledge and skill?'' (Emphasis added.)

This seems to be a confirmation by the North Carolina Supreme Court of the view hereinbefore voiced that the Tennessee Supreme Court, when it expressed the opinion that photography was not subject to regulation under the police power rule, did by necessary inference bring watch repairing within the exclusion.

The brief of appellee cites two cases wherein there was at issue the constitutionality of a statute purporting to regulate the business of repairing watches. The Court is unable to find any other decisions wherein this question is made. It is probably justified, therefore, in concluding that there are no other reported decisions on the point.

The first of these two is the Oklahoma case of *State ex rel. Whetsel v. Wood,* 207 Okl. 193, 248 P.2d 612, 615, 34 A.L.R.2d 1321, decided in 1952. It was insisted there, as in the case at bar, that the statute could be legally justified as an exercise of the sovereign's police power. The Court rejected that insistence with the statement that:

''While watchmaking is an important calling, it is not such a business as affects the public health, safety and welfare.''

That Court, after observing that it had found no case ''involving the regulation of watchmakers'', then mentioned the North Carolina decision, *supra,* adjudging unconstitutional a statute regulating the occupation of photography, and expressed the view that ''there is no

more excuse for requiring a watchmaker to pass a test as to his technical qualifications than for requiring a photographer to pass such a test''.

The case of *Minnesota Board of Examiners in Watchmaking v. Robert Sherratt* decided by the District Court of the 8th Judicial District of Minnesota (the second of the two cases cited by appellee) likewise adjudged unconstitutional a like statute with the statement:

> ''That the protection of the public health, safety, welfare, or morals of the people of Minnesota, or any thereof, do not require the licensing, regulation, or interference with, the said practice and trade of repairing watches and of, 'watchmaking' in any manner * * *''.

Following the report of the Oklahoma case heretofore mentioned, there is a text discussion of this question in 34 A.L.R.2d 1326. The author there makes this statement:

> ''Regulation of technical occupations is not *ipso facto* valid because of its purpose to protect the citizen. The right to engage in work of one's own choosing is a fundamental one, protected from unreasonable interference by both state and federal constitutions. Consequently, in the case of enactments of this kind a balance must be struck between constitutional and unconstitutional regulation, and the task of determining which way the balance has swung in a particular case lies with the courts.''

From the exhaustive investigation made by this Court, and no doubt by all the solicitors in this case, with the results hereinbefore expressed, it may, and should, be

said with a strong assurance of accuracy that every Court which has dealt directly with the question, or indirectly, as is the case of the Tennessee and North Carolina Courts, respectively, has determined that the regulation of watch repairing purported to be required by this Tennessee Statute is an unconstitutional regulation.

■ Our statute requires of a would-be repairer of watches such general and technical education "as the board shall deem necessary". He must likewise satisfy it that he is a person of good character. He must pass such examination on the subject as the board may give, and likewise give a physical demonstration of his talents as a watch repairer. These requirements would have the effect of preventing many would be repairers of watches from entering that old and "innocuous" occupation. Yet, this Court is entirely unable to imagine how such requirements at all promote the general welfare or protect the public morals, health or safety, or have any real tendency to those ends. Such results not appearing, in so far as this Court can see, it follows that its plain duty is to adjudge this statute unconstitutional because it "may deny some citizens their inherent right to earn their livelihood in a private field of work, thus depriving them of a valuable property right without due process of law", quoting from the Oklahoma case of *Whetsel v. Wood, supra* (207 Okl. 193, 248 P.2d 615).

■ It is argued that the statute is justified to the end that incompetency and fraud may be avoided.

"Incompetent performance of such contracts does not directly affect the public, but affects only the parties thereto". *Campbell v. McIntyre,* 165 Tenn. 47, 54, 52 S.W.2d 162, 164.

And, if the opportunity for a dishonest person in pursuit of a private occupation to defraud his customer is to become a justification for the regulation under the police power rule of an otherwise private occupation, then the Legislature may well regulate every conceivable business, and "the claim of the police power rule would * * * become * * * a delusive name for the supreme sovereignty of the state to be exercised free from constitutional restraint." *State v. Greeson*, 174 Tenn. 178, 191, 124 S.W.2d 253, 258.

Affirmed with costs taxed to the appellant Board.

PREWITT, JUSTICE, not participating.