Wallace W. GATES, County Attorney, Bryan County, Oklahoma; Orville Reynolds, Sheriff of Bryan County, Oklahoma; Oklahoma Dairy Products Institute, Inc., Plaintiffs in Error,

v.

M. C. EASTER, Defendant in Error.

No. 38576.

Supreme Court of Oklahoma.

May 24, 1960.

Rehearing Denied Aug. 2, 1960.

Wallace W. Gates, County Attorney, Bryan County, Durant, Roy L. Sullivan, Neill P. McInnis, Oklahoma City, David S. MacDonald, Jr., Durant, for plaintiffs in error.

Paul & Montgomery, Louie Gossett, W. L. Steger, Durant, for defendant in error.

IRWIN, Justice.

The plaintiff secured a temporary restraining order against the defendants, the county attorney and county sheriff of Bryan County, Oklahoma, restraining and enjoining them, as county officials, from interfering with the business of plaintiff and from enforcing or attempting to enforce the provisions of Title 2 O.S.Supp.1955, Sections 419.1. through 419.8. Oklahoma Dairy Products Institute, Inc., was permitted to intervene.

On final consideration, the cause was submitted on an agreed statement of facts, material parts thereof being: Plaintiff has been engaged in the retail business for a number of years and in the course of his business sells and dispenses at retail, milk, ice cream and other dairy products. Prior to the enactment of Sections 419.1 through 419.8, supra, he entered into an oral agreement with a certain wholesaler and manufacturer of ice cream and dairy products for the loan and use by him of a certain ice cream cabinet with attached electric refrigeration of a value in excess of $100; that the same was furnished by the wholesaler without cost and plaintiff agreed he would store in such equipment only ice cream and other dairy products sold by the wholesaler and manufacturer; that the

equipment so furnished has been used by him solely for such purposes and that he has not paid any money or other thing of value for the use of such equipment.

The defendants and intervenor appeal from the order of the trial court permanently restraining and enjoining them from enforcing or attempting to enforce the aforementioned statutory provisions and interfering with the business of plaintiff. The parties will be referred to by their trial court designation, except that intervenor will be referred to as defendant.

## Contentions

Plaintiff contends the regulation attempted by the act in no wise affects the public health, welfare and safety, but to the contrary, is unreasonable and will tend to centralize the dairy business; that the act is unconstitutional and violates rights guaranteed by Art. 2, Sections 2, 7, and 32 of the Constitution of Oklahoma and the 14th amendment to the U. S. Constitution; that the act is in excess of legislative authority and invades private rights and deprives wholesalers and retailers the right to contract on their own terms and attempts to nullify the terms of an existing contract; and that the act is in violation of fundamental constitutional guaranties and in excess of the police powers of the State.

Defendants contend that the business of selling and dispensing dairy products is a matter affecting the public health and welfare; that the statutory regulation is within the police powers of the State and is designed to protect the public health and welfare and is reasonable and constitutional.

## Conclusions

■ Title 2, O.S.Supp.1955, Sections 419.1 through 419.8, were enacted for the purpose of preventing the practice of subsidizing retail dealers in the dairy products business through secret discounts and the furnishing of equipment by dairy processing, wholesaling and distributing plants. Section 419.1, supra, expresses the Legislative intent wherein it provides that such practice is forcing numerous dairy plants out of business, adversely affects the stable economy of Oklahoma and tends to reduce the price paid to the dairy producer, increase the price paid by the consumer, and is detrimental to the welfare of the State.

That portion under attack is Section 419.3, which declares it unlawful, inter alia, for any person or corporation engaged in business as a wholesaler, processor or distributor of dairy products, to furnish, give, rent, lease or lend, to a retail dealer in dairy products, any equipment or fixtures having a real or substantial value, including ice cream cabinets and bulk milk dispensers. This section further provides that any gratuitous loan arrangement covering such equipment or fixtures existing at the time of passage of the act shall automatically terminate, by operation of law, at the end of 14 months thereafter. The act has been effective for more than 14 months.

■ The dairy industry in Oklahoma is one of the basic industries and is of paramount importance to the people of the state. Milk and the products manufactured therefrom are used most extensively by all the people of the state and curtailment of the industry or the lessening of the supply of the products would seriously affect the people of the state and result in serious economic loss. In Jack Lincoln Shops, Inc. v. State Dry Cleaners' Board, 192 Okl. 251, 135 P.2d 332, 335, we said "that any business affected with a public interest is, under the police power of the state, subject to reasonable regulation for the public good * * *", and "the police power is the power to enact laws 'to promote the order, safety, health, morals and general welfare of society.'" In State ex rel. Whetsel v. Wood, 207 Okl. 193, 248 P.2d 612, 614, 34 A.L.R.2d 1321, we said:

"The term 'police power' comprehends the power to make and enforce all wholesome and reasonable laws and regulations necessary to the maintenance, upbuilding, and advancement of the public weal, and protection of the public interests."

■ The dairy industry, being of great public interest, can be and is a subject of

regulation by the Legislature under the police powers of the State. The act in question constitutes an exercise of the police power by the Legislature to promote the general welfare of the people of the State.

 The basis of plaintiff's contention is that the act is unconstitutional. In determining this issue we must be cognizant of well-established principles of law that "'this court would indulge every possible presumption that an act of the Legislature was constitutional"; and, an "act will be declared constitutional unless it can be clearly demonstrated that the legislature did not have the power or authority exercised or that its authority was exercised arbitrarily and capriciously." Adwon v. Oklahoma Retail Grocers Ass'n, 204 Okl. 199, 228 P.2d 376, 379; School District No. 25 of Woods County v. Hodge, 199 Okl. 81, 183 P.2d 575. Although private rights must yield to a reasonable exercise of the police power, they are not to be annihilated thereby, or interfered with to any greater extent than is reasonably required by a proper exercise of the power, taking into consideration the legitimate object to be accomplished. Grison Oil Corp. v. Corporation Commission, 186 Okl. 548, 99 P.2d 134. A legislative "police power" enactment is not conclusive of an asserted public interest or that it is detrimental to the general welfare of the State. This is a matter which is always open to judicial inquiry, and a determination of what is a proper exercise of the police power is always subject to supervision of the courts. Oklahoma Natural Gas Co. v. Choctaw Gas Co., 205 Okl. 255, 236 P.2d 970.

This cause was submitted to the trial court upon the pleadings and agreed statement of facts. No evidence was offered nor was any introduced, nor was it stipulated and agreed that the controversy at issue is only an isolated case; that it was not the general practice for wholesalers to furnish equipment such as was furnished in the case at bar; that by reason of it being an isolated case, the price of milk to the producer would not be materially affected or the price of the finished product would not be increased to the general public; that the Legislature did not have the power or authority exercised or that its authority was exercised arbitrarily and capriciously; that the plaintiff would suffer irreparable damage and injury if defendants were not enjoined and restrained from enforcing the statutory provisions; that plaintiff's business would be interfered with to a greater extent than is reasonably required, taking into consideration the legitimate object sought to be accomplished; that subsidization of retail dealers in the dairy business through secret discounts and the furnishing of equipment by wholesalers is not forcing numerous dairy plants out of business, does not adversely affect the stable economy of Oklahoma and tends to reduce the price paid to the dairy producer, increase the price paid by the consumer, and is not detrimental to the welfare of the State.

 The Legislature is primarily the judge of the necessity of an enactment and every possible presumption is in favor of its validity. Although the court may hold views inconsistent with the wisdom of the law, it may not annul the law unless palpably in excess of legislative power. Legislators must be presumed to be in touch with their local conditions. They are elected generally upon platforms which have called attention to local conditions, so that when assembled the conditions and needs of particular localities must to some measure at least be deemed to be imparted through the local legislators to the other members of the law-making body, thus the conditions of the state in gross become imparted to the whole group, and from the composite picture may be drawn a fair likeness of the economic, social and political status of the state. The presumption must be that the Legislature has acted upon sufficient information as to needs of the people. Herrin v. Arnold, 183 Okl. 392, 82 P.2d 977, 119 A.L.R. 1471.

 We can only conclude, as there is no evidence to the contrary, that the knowl-

edge of the Legislature was such that the practice of subsidization was forcing numerous dairy plants out of business and was adversely affecting the stable economy of the state of Oklahoma and was reducing the price paid to the dairy producer, increasing the price paid by the consumer and was detrimental to the welfare of the State. Such being the case, we hold that the act is not arbitrary and capricious and is a proper exercise of the police power, taking into consideration the legitimate aims sought to be accomplished.

We do not believe the nullification of the contract entered into between plaintiff and the wholesaler by the legislative enactment contravenes Article 2, Sec. 7, of the Oklahoma Constitution and the 14th amendment to the Constitution of the United States which provides no state shall " * * * deprive any person of life, liberty, or property, without due process of law, * * *." In Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, the Court held:

"It does not matter that legislation appropriate to a legitimate end has the result of modifying or abrogating contracts already in effect, as contracts are to be regarded as having been made subject to the future exercise of the constitutional power of the state, and the reservation of essential attributes of sovereign power is read into contracts as a postulate of the legal order."

See also Croxton v. State, 186 Okl. 249, 97 P.2d 11; Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

The cause is reversed and remanded to the trial court with instructions to vacate the judgment rendered in favor of the plaintiff granting a permanent injunction, and enter judgment in favor of the defendants.

DAVISON, C. J., WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON, and BERRY, JJ., concur.