**L. G. SEMKE, d/b/a Semke Used Cars and Semke Auto Mart, Plaintiff in Error,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA MOTOR VEHICLE COMMISSION, Defendant in Error.**

No. 42900.

Supreme Court of Oklahoma.

Jan. 27, 1970.

Rehearing Denied Feb. 24, 1970.

William J. Otjen, Jr., Enid, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Virgil R. Ball, Dist. Atty., of Garfield County, for defendant in error.

Mainard Kennerly, Oklahoma City, Wallace & Owens, Miami, Thomas G. Marsh, Tulsa, for amicus curiae, Oklahoma Automobile Dealers' Association.

BLACKBIRD, Justice.

The Oklahoma Motor Vehicle Commission filed an action in the District Court of Garfield County seeking a temporary and permanent injunction against the plaintiff in error. The district court issued a temporary injunction and upon the trial of the issues entered judgment of a permanent and perpetual injunction.

The following facts are presented. Defendant below, L. G. Semke, d/b/a Semke Used Cars and Semke Auto Mart, hereafter referred to as Semke, had been in the business of dealing in automobiles for a number of years in Enid, Oklahoma, under various names, such as Semke Discount Sales, Semke Auto Mart and Semke's Car Buying Service, all advertised as located at the same address of 1416 Grand, Enid, Oklahoma. Semke would, at different times, advertise that he could buy cars at a lower price; that he could buy cars from dealers and save the customer as much as five hundred dollars; that he could get a car built to the specifications of the customer; could get full service, a 50,000 mile warranty, and would trade cars and the customer could drive his own car until delivery of car he ordered built to his own specifications. Semke sold to the public new or unused cars without a license from the Oklahoma Motor Vehicle Commission as required by Title 47 O.S.1961, § 564. For his failure to obtain a license as required by statute, the trial court issued a permanent injunction restraining and enjoining Semke from operating his business as a dealer of new or unused motor vehicles.

Semke now appeals from this injunctive order, alleging the following propositions for reversal:

"1. Failure of Oklahoma Motor Vehicle Commission to post bond deprived the court of jurisdiction to issue injunction.

"2. The demurrer to the petition and amended petition should have been sustained.

"3. The motion to dissolve the temporary injunction should have been granted.

"4. There is no evidence to support the decision of the trial court.

"5. Title 47 O.S., § 561 through 568, under which the injunction was granted are unconstitutional and violate due process and fundamental rights."

The propositions will be considered in the order as above set forth.

■ Semke, in his first proposition, asserts that the injunction issued by the district court is void and the court has no jurisdiction due to the failure of the Commission to file a security bond in accordance with the provision of 12 O.S.1961, § 1392. This statute provides that "unless otherwise provided by special statute, no injunction shall operate until the party obtaining the same shall give an undertaking, with sufficient surety * * * to secure the party injured the damages he may sustain." We find that it is otherwise provided by statute in Title 12 O.S.1961, § 66, wherein it is stated in part:

"Whenever an action is filed in any of the courts in the State of Oklahoma direction of any department of the State by the State of Oklahoma, or by the of Oklahoma, *no bond,* including cost, replevin, attachment, garnishment, redelivery, *injunction bonds,* * * * shall be required from the State of Oklahoma * * *". (Emphasis supplied.)

The wording of the statute is clear and certainly comes within the meaning of the portion of § 1392, supra, that the injunction bond need not be posted if otherwise provided for by statute. The Oklahoma Motor Vehicle Commission is a department of the State within the meaning of the terms of the statute, and is thereby excluded from the requirements of said section.

■ The next proposition to be considered is whether the amended petition states a cause of action. Without detailing the allegations of the petition in full, it shall be sufficient to state that it alleges that Semke is doing business and advertising for sale new cars without a license in violation of Title 47, O.S.1961, § 561 through 568, and the resolutions passed by the Oklahoma Motor Vehicle Commission pursuant thereto, and that irreparable damage would result if injunctive relief is not granted. We find the facts alleged in the amended petition sufficiently and adequately state a cause of action.

■ Semke next contends that the trial court should have dissolved the temporary

injunction by reason of the 25 affidavits he submitted to the court from persons who had purchased cars from him. While the affidavits show that these 25 customers have no complaints of Semke or his manner of business, they cannot speak for the public. Nor do the affidavits negate the complaint of the petition that Semke is operating as a new car dealer, without a license as required by statute.

■ Semke then asserts that there was insufficient evidence to support the decision of the trial court. Determination of this point requires a study of the evidence. Semke stipulated that he was in the car business and had not applied for, nor did he have, a license in accordance with the terms of the statute. To sustain the decision of the trial court, it was then necessary for the Commission to prove that Semke advertised or sold new or unused cars in violation of the provisions of Sections 561 through 568, supra. Section 564 requires that a license be secured from the Commission before advertising for sale, or selling, a new or unused car. He maintains that he did not need a license, in that he neither advertised, nor sold, new or unused cars. The question to be resolved then is whether Semke advertised or sold new or unused cars. The Commission introduced into evidence, among others, advertisements which appeared in the Enid newspaper of August, 1967, such as the following:

"I can get you a '68 Model Close-Out Priced on First '68 Models that come off the Assembly Line!

Get your car built ahead of everyone else by Acting Today!

COME BY........WE TRADE

Full factory warranty—Local service

SEMKE AUTO MART

1416 North Grand"

"Get my Price on a '68 Model
Before you Buy a '67 Model
You'll be Glad you did
Full Service—50,000 Mile Warranty

WE TRADE
You drive your car until yours is delivered by the factory

SEMKE AUTO MART
1416 North Grand"

These are examples of ads which the Commission introduced into evidence not using the word "new" in any ad, nor the phrase that they were selling these cars. Semke contends that the cars he advertised were not new cars and were not advertised as new or unused cars. He points out that nowhere in any of the ads does the word "new" appear. It would be wholly illogical to say the above ads are not examples of advertising for the sale of new cars. The intended purpose of the ads is very apparent and needs no further discussion. It is equally apparent from the evidence that Semke sold these cars as new cars and that his customers purchased them as new cars. Mrs. D., a customer of Semke, testified:

"Q. Have you ever had occasion to buy any automobiles from Glen Semke? A. Yes, sir.

"Q. Will you tell about that occasion? A. I wanted a new car.

"Q. So what did you do? A. I went to Mr. Semke's.

"Q. Did you find a new car there? A. I found a car that we liked.

"Q. Where was it? A. It was in the show room.

"Q. Did it have the government sticker in the window? A. Yes, sir. It did.

"Q. Did you negotiate with Mr. Semke for the purchase of this car? A. I did.

"Q. And did you buy it? A. Yes, sir.

*    *    *    *    *    *

"Q. Did you buy it as a new car? A. I thought that it was a new car.

"Q. Did you later then get a title to the car. A. I did.

"Q. Did that title come from the new car dealer, a franchised dealer, or who did it come from? A. No, sir, it didn't come from a franchise dealer. It was a transfer title.

"Q. When you received this title and it wasn't from the franchised dealer, did you make any objections? A. I did.

"Q. And why was that? A. I wanted a new title.

"Q. And why did you want a new title? A. I didn't want a transfer title to a new car."

We believe that there is sufficient evidence to find that Semke sold new cars. The only other matter left to dispose of on this question is the one of damages. Semke asserts that one cannot have injunctive relief unless he proves damages, citing Stuart v. Titus, Okl., 400 P.2d 797. The Stuart case does not hold that damages must be proved, but does state that irreparable injury must result before the extraordinary relief of injunction can be granted. Injunctive relief is granted where damages are an inadequate remedy. Suffice it to say in the present case, that a violation of a state statute is an injury to the State and its citizens, and a continuing violation is an irreparable injury for which injunctive relief is available.

The last contention of Semke is that the sections of Title 47 under which the action was brought are unconstitutional and in violation of due process. He advances many and various theories for the invalidity of the Act, including the right to the fruits of one's labor, discriminatory legislation, denial of free speech, creation of a monopoly, restraint against trade and arbitrary price fixing, these being some of the more salient reasons for this proposition.

We have not had occasion to rule on the constitutionality of the provisions of this particular act, though similar acts have been constitutionally construed. These are: (Barbers) Schwartze v. Clark, 188 Okl. 217, 107 P.2d 1018; (Dry Cleaners) Jack Lincoln Shops v. State Dry Cleaner's Board, 192 Okl. 251, 135 P.2d 332; (Gambling Devices) One Chicago Coin's Play Boy Marble Board v. State, 202 Okl. 246, 212 P.2d 129; (Unitization Act) Woody v. State Corp. Commission, Okl., 265 P.2d 1102; (the Healing Arts) Taylor v. State, Okl., 291 P.2d 1035; (Milk Business) Oklahoma City v. Poor, Okl., 298 P.2d 459; (Alcohol Sale) Polk v. Alcohol Beverage Control Board, Okl., 420 P.2d 520, and other areas of private enterprise. In these cases we have pointed out the fundamental principles involved in this type of legislation. The right of the legislature to regulate occupations and professions for the protection of the lives, health, safety and welfare of its people is unquestioned. Burger v. Richards, Okl., 380 P.2d 687; Polk v. Oklahoma Alcoholic Control Board, supra. The legislature may, in the proper exercise of the police power, define and declare what is deemed injurious to public health, morals, safety and general welfare. One Chicago Coin's Play Boy Marble Board v. State, supra. We have said that the police power of the state to regulate a business affected with a public interest is a function of the state legislature, and every possible presumption is to be indulged in favor of the correctness of its finding. Jack Lincoln Shops v. State Dry Cleaner's Board, supra. In this connection, however, no regulation of a business by the legislature will be upheld in a matter of private concern that bears no perceptible relation to the public welfare. State v. Wood, 207 Okl. 193, 248 P.2d 612, 34 A.L.R.2d 1321; State ex rel. Short v. Riedell, 109 Okl. 35, 233 P. 684, 42 A.L.R. 765.

In the first provision of the Act (47 O.S.1961, § 561ff) the legislature declared the economy of the State was vitally affected by the distribution and sale of new cars. For this reason it found that it should exercise the police power of the State and regulate and license the manufacturers, distributors, wholesalers, representatives, dealers and salesmen of new motor vehicles doing business in Oklahoma, in order to prevent fraud, imposition and other abuses and to protect and preserve

the investments and properties of the citizens in this State. We are of the opinion that this declaration and finding by the legislature is valid and within the constitutional limitations of their police power. The advertising and selling of new cars is of paramount interest in this motoring age. It is no longer uncommon for families to have one or more cars. Personal automobile transportation is a way of life and a necessity for many citizens of our state. Its importance to the health, safety and welfare of our citizens is apparent, and, in our opinion, unquestioned. We have been cited no cases and our exhaustive research has revealed none to the effect that the regulation of new car sales is not a proper function of a state legislature. On the contrary, even the jurisdictions that have stricken their motor vehicle commission acts do not deny that the legislature has the power to regulate the sale of new cars under their police power. It is usually held in the states that have considered this question, that if the motor vehicle commission act of that state is defective, it is because of some provision therein that is deemed discriminatory, or violative of due process.

Having determined that the legislature has a right to enact legislation in the field of advertising and sale of new cars, we now reach Semke's arguments that this particular act is unreasonable, arbitrary, capricious, or discriminatory. We have held that occupation regulations of that character are beyond the scope of legislative power. Western Surety Co. v. Childers, Okl., 372 P.2d 214, Taylor v. State, ex rel. Rutherford, Okl., 291 P.2d 1033. Semke attacks the provision of the Act requiring a dealer, in order to come within its definition of a "Motor Vehicle Dealer", to have a dealer's franchise from a manufacturer or distributor of new or unused vehicles (Sec. 562(a), Tit. 47, supra). He contends, in substance, that this provision, when considered with another provision of the Act making it a misdemeanor to engage in business as a motor vehicle dealer, or salesman, without having the State license required by the Act (Sec. 564, Tit. 47, supra), renders the Act unconstitutional. However, in our opinion, the constitutionality of the cited portion of the Act requiring a dealer to have a new car franchise in order to qualify for a State license to sell new or unused motor vehicles is not properly before this Court in this case, in view of the hereinbefore mentioned stipulation that Semke had not applied for such a license. Having failed to thus apply for, and to have been denied, a State license on the ground that he did not have a new car dealer's franchise, he is in no position to challenge the constitutionality of that portion of the Act. See Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, 95 (Appeal dism., 305 U.S. 376, 59 S.Ct. 259, 83 L. Ed. 231) quoting Aikins v. Kingsbury, 247 U.S. 484, 38 S.Ct. 558, 62 L.Ed. 1226, and other authorities cited in Thrasher v. Board of Governors, Okl., 359 P.2d 717, 725, including 11 Am.Jur., "Constitutional Law", Sec. 111, p. 754, footnote 1. That portion (Sec. 562a, supra) of the Act is severable from the portions requiring a State license for advertising and selling new or unused motor vehicles. Thus, the latter portions must stand (Johnson v. State Election Board, 197 Okl. 211, 167 P.2d 891); and, in view of the admitted facts, the trial court committed no error in enjoining the acts of Semke, which under the Act, were unauthorized without his having the State license required therein.

Said court's judgment is therefore affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS and LAVENDER, JJ., concur.

DAVISON, J., concurs in part and dissents in part.

JACKSON, HODGES and McINERNEY, JJ., dissent.

HODGES, Justice (dissenting).

I oppose that portion of the majority opinion denying Semke the standing to challenge the constitutionality of the licensing provisions of the act. The majority opinion considers at length the question of the constitutionality of the legislature entering the field of licensing and regulating the advertising and selling of new and used motor vehicles and find the act to be a valid exercise of the police power of the state. But having considered the whole of the act, it then refused to consider that portion of the act which requires an applicant to have a new car franchise from a manufacturer for the reason Semke has not made application for a license. It appears inconsistent to say Semke has the standing to challenge the whole of the act but not the portion that directly affects him.

The rule in this jurisdiction has long been, and justly so, that a challenge to a statute on constitutional grounds will not be considered unless properly raised. It is considered that one has not properly raised the constitutional question unless he is affected by the statute or has been deprived of some right or privilege to which he is lawfully entitled. Black v. Geissler, 58 Okl. 335, 149 P. 1124; Kelly v. Roetzel, 64 Okl. 36, 165 P. 1150; Bennett v. State, 147 Okl. 14, 294 P. 149; Hine v. Board of County Com'rs of McClain County, 177 Okl. 251, 58 P.2d 570; Davis v. McCasland, 182 Okl. 49, 75 P.2d 1118; Shinn v. Oklahoma City, 184 Okl. 236, 87 P.2d 136; C. D. Mitchell v. Williamson, Okl., 304 P.2d 314. The reasoning for the rule is that until one applies for a license and is denied, he has not been deprived of a right or privilege or he has not been affected by a statute which he claims to be unconstitutional. Shinn v. City of Oklahoma, 184 Okl. 236, 87 P.2d 136; Moore v. Oklahoma City, 161 Okl. 205, 17 P.2d 953. This is not the situation in the present case. Semke is not seeking a declaratory judgment as an anticipatory measure, but on the contrary, it is the Commission who is attempting to

enforce the provisions of the act. The danger to Semke's business is immediate and present.

The majority opinion cites Thrasher v. Board of Governors, Okl., 359 P.2d 717, and the cases therein cited for their position. There the Board had made no attempt to enforce the provisions of "The State Dental Act", but it was the plaintiff who brought an action challenging its constitutionality in several respects. In the present case, Semke did not bring the action against the Commission to test the constitutionality of the act, but rather it is the Commission who has brought an action against Semke to enforce its licensing provisions. Under these circumstances he is entitled to defend and answer the charges against him by challenging its constitutionality. Freedman v. State of Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649; Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949; 16 C.J.S. Constitutional Law § 76 p. 243.

In Shinn v. Oklahoma, supra, the plaintiff attacked the constitutionality of ordinances regulating the business of money lenders. The plaintiff had not acquired a license as required by the ordinance. For that reason defendant challenged plaintiff's right to attack the validity of the ordinances on the theory the court will not consider hypothetical or anticipatory questions. The court held that since plaintiff had not obtained a license he was in no position to raise the constitutionality of the regulatory and revocation provisions of the ordinance, but that he did have a right to question the constitutionality of the ordinances insofar as they required the plaintiff to obtain a license before engaging or continuing in the occupation of money lender. The court said:

"This court will not pass upon the constitutionality of an act of the Legislature or any of its provisions until there is presented a proper case in which it is made to appear that the person complaining has been or is about to be denied some right or privilege to which he was

lawfully entitled, or is about to be subjected to some of its burdens or penalties."

See also, Moore v. Oklahoma City, supra, City of Shawnee v. Taylor, 191 Okl. 687, 132 P.2d 950; 16 Am.Jur. Constitutional Law, § 120 p. 314.

Applying the above principles to the present case, it is obvious that Semke is in immediate danger of being deprived of a right to pursue a lawful business unless he is allowed to challenge the constitutionality of that part of the licensing provisions which requires him to possess a new car dealer's franchise. The judgment of the trial court subjects him to the burdens and penalties of the act. His business is in jeopardy unless our attention is directed to his constitutional complaints. It is inconceivable to say Semke is not affected by this act when by its enforcement as decreed by the trial court, he is prevented from engaging in what would otherwise be a lawful occupation.

Additionally, the Supreme Court of the United States has long held that where an act is invalid or void upon its face as being discriminatory or arbitrary the constitutionality may be challenged even though the party has not made application for a license. Lovell v. City of Griffin, supra, Smith v. Cahoon, 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264; City of Chicago v. Atchison T. & S. F., 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed. 2d 1174; Freedman v. Maryland, supra.

In my opinion the particular provision of the act which requires Semke to have a franchise with a manufacturer or distributor of new cars in order to qualify for a license to sell new or unused motor vehicles is invalid, unconstitutional and void on its face. It gives special and exclusive privileges to one set or class of dealers which it denies to others who are equally fit and capable of dealing in the subject matter involved. Joyner v. Centre Motor Co., Va., 66 S.E.2d 469. It allows the new car manufacturers and distributors in effect to set up a monopoly and control prices for no one is eligible under the act to sell new cars unless the manufacturer or distributor has given its prior approval. A person may meet all the requirements set by the Commission and the State of Oklahoma to qualify for a license to engage in the lawful business of selling new cars and be prevented from acquiring the license, not by the State of Oklahoma, but by some private corporation. The legislature does not have the prerogative to delegate its constitutional police powers to private corporations. This is repugnant to Art. 2 § 2, Art. 2 § 7, of the Oklahoma State Constitution and the inherent police power of the state legislature, along with the 14th amendment of the Federal Constitution. Nelsen v. Tilley, 137 Neb. 327, 289 N.W. 388, 126 A.L.R. 729; Ohio Motor Vehicle Deal v. Memphis Auto Sales, 103 Ohio App. 347, 142 N.E.2d 268.

I respectfully dissent.

I am authorized to state that McINERNEY, J., concurs in the views herein expressed.